# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 17, 2014

## STATE OF TENNESSEE v. STEPHANO L. WEILACKER

**Direct Appeal from the Criminal Court for Montgomery County**
**No. 40700673     Michael R. Jones, Judge**

---

**No. M2013-01532-CCA-R3-CD - Filed September 8, 2014**

---

The appellant, Stephano L. Weilacker, was convicted in the Montgomery County Criminal Court of especially aggravated kidnapping, a Class A felony, and aggravated robbery, a Class B felony, and received an effective twenty-year sentence to be served consecutively to a previous sentence. In this delayed appeal, the appellant contends that the evidence is insufficient to support the convictions, that the trial court erred by denying his motion to suppress evidence, that the State committed prosecutorial misconduct during closing arguments, that the trial court erred by failing to instruct the jury as provided by State v. White, 362 S.W.3d 559 (Tenn. 2012), and that consecutive sentencing was improper. However, because no timely motion for new trial was filed in this case, we can only review sufficiency of the evidence and sentencing and the other issues for plain error. Moreover, because this court addressed sufficiency and sentencing in the appellant's first direct appeal of his convictions, they cannot be reconsidered. Finding no plain error in the remaining issues, the appellant's convictions are affirmed.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which ROGER A. PAGE, J., and JERRY L. SMITH, SP. J., joined.

Richard C. Strong, Nashville, Tennessee, for the appellant, Stephano L. Weilacker.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In June 2007, the Montgomery County Grand Jury indicted the appellant, Jacobi K. Allen, and David A. Selby for the especially aggravated kidnapping of Frank Levarre and the aggravated robbery of Brandi Perry. The appellant was tried separately from his co-defendants, and the jury convicted him as charged on November 24, 2009. The facts at trial were as follows:

> On June 30, 2006, the Triangle Kwik Stop in rural Montgomery County was staffed by Brandi Perry. Ms. Perry observed two young men come into the store. One of them was armed with a pistol. The man pointed the gun at her, then pointed the gun at Frank Lavarre, a vendor who was stocking a display at the store. The man demanded money and cigarettes. He ordered Mr. Lavarre to lie on the floor. Ms. Perry complied with the request, handing over money and cigarettes. The man then shot Mr. Lavarre in the leg.
>
> The men left the market and jumped into the back of a large white car. Ms. Sandra Lewis, who was shopping next door at the Food Lion, saw two young African-American men leave the market laughing and running. Ms. Lewis was alarmed by the situation, so she wrote down the license plate number of the car and called the police.
>
> Several days later, Appellant and David Selby were arrested while riding in Appellant's white Mercury Grand Marquis. Police Officer Scott Beaubien initiated a traffic stop of Appellant's vehicle. The weapon used in the Triangle Kwik Stop robbery was found in the car. Mr. Selby's fingerprints were found on the pistol.
>
> Appellant, Jacobi K. Allen, and David Selby were indicted by the Montgomery County Grand Jury for aggravated robbery and especially aggravated kidnapping for their involvement in the Triangle Kwik Stop robbery.
>
> At trial, Mr. Selby testified that Appellant called him on the day of the robbery and asked him to ride around with him and to go buy some fireworks. Appellant was driving his white Mercury Grand Marquis. When Mr. Selby got into the car, he stated that there were two other younger African-American

males in the back seat. As the group passed the Triangle Kwik Stop market, Appellant asked the men in the back seat if they wanted to make a little money. Appellant told them what to do and provided a pistol to the men. After the men robbed the market, the money and cigarettes were divided between Appellant and the two men.

Mr. Selby admitted that his fingerprints were found on the pistol that was used in the robbery. He explained that when police initiated the traffic stop of the vehicle, Appellant handed Mr. Selby the weapon. Mr. Selby then handed the weapon back to Appellant, who placed it under the seat.

Appellant presented the videotape from the store security camera in support of his defense. The videotape showed that the armed robbery was committed by two men other than Appellant.

At the conclusion of the proof, the jury found Appellant guilty of aggravated robbery and especially aggravated kidnapping. The trial court, at a sentencing hearing, sentenced Appellant to ten years for aggravated robbery and twenty years for especially aggravated kidnapping, to be served concurrently to each other but consecutively to the sentence in case number 40600977, a previous sentence. The trial court entered the judgments on December 16, 2009.

State v. Stephano L. Weilacker, No. M2010-00497-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 144, at **2-5 (Nashville, Mar. 3, 2011), perm. to appeal denied, (Tenn. 2011).

On February 4, 2010, the appellant filed a motion for new trial. Although the motion was untimely, the trial court addressed the appellant's issues and denied the motion. On appeal to this court, the appellant argued that the evidence was insufficient to support the convictions because Selby's testimony was not sufficiently corroborated, that the trial court improperly failed to instruct the jury on all lesser-included offenses, and that the trial court improperly ordered consecutive sentencing. Id. at *2. This court, noting that the appellant's notice of appeal also was untimely, held that any issue other than sufficiency of the evidence and sentencing was waived because the motion for new trial was filed more than one month after the entry of the judgments. Id. at **7-8. Nevertheless, this court waived the untimely filing of the notice of appeal to address the issues, including the jury instruction issue for plain error. Id. at *9. This court held that the evidence sufficiently corroborated Selby's

testimony, that the appellant was not entitled to plain error relief because he failed to include the jury instructions in the appellate record, and that the trial court properly ordered consecutive sentencing. See id. at *2.

After our supreme court denied the appellant's application for permission to appeal, he filed a timely petition for post-conviction relief, arguing, in part, that he received the ineffective assistance of counsel because trial counsel failed to file a timely motion for new trial. On June 3, 2013, the post-conviction court granted relief in the form of a delayed appeal and stayed its consideration of the Petitioner's remaining post-conviction claims.

The appellant did not file a motion for new trial. In this delayed appeal, he again argues that the evidence is insufficient to support the convictions and that consecutive sentencing was improper. He also contends that the trial court erred by denying his motion to suppress evidence found in his vehicle, that the State committed prosecutorial misconduct during closing arguments, and that the trial court erred by failing to instruct the jury as provided by White.

## II. Analysis

Initially, we note that the State argues that the appellant has waived all issues other than sufficiency of the evidence and sentencing because he failed to file a timely motion for new trial and that he has failed to establish plain error. The State also argues that we cannot address sufficiency and sentencing because this court addressed them in the appellant's first direct appeal of his convictions. We agree with the State.

The appellant's February 2010 motion for new trial was untimely and, therefore, a nullity. See Tenn. R. Crim. P. 33(b). Moreover, because the trial court did not have jurisdiction to hear and determine the merits of the untimely motion, the court's "erroneous consideration [and] ruling on a motion for new trial not timely filed . . . [did] not validate the motion." State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). Pursuant to Tennessee Code Annotated section 40-30-113, the post-conviction court granted the appellant's request for a delayed appeal. Tennessee Code Annotated section 40-30-113(a)(3) provides that when a trial court "finds that the petitioner was denied the right to appeal from the original conviction in violation of the Constitution of the United States or the Constitution of Tennessee and that there is an adequate record of the original trial proceeding available for review," the court can, when no motion for a new trial was filed in the original proceeding, "authorize a motion to be made before the original trial court within thirty (30) days." In this case, the post-conviction court's order granting the delayed appeal did not specify that the Petitioner was to file a motion for new trial within thirty days. Although the better practice would have been for the trial court to have done so, Tennessee Code Annotated section 40-

30-113(b) provides that "[a]n order granting proceedings for a delayed appeal shall be deemed the final judgment for purposes of review." Therefore, the Petitioner should have filed a motion for new trial. The appellant's not filing a motion within thirty days of the post-conviction court's order means that no timely motion for new trial has ever been filed in this case. Therefore, we agree with the State that we can only review the appellant's claims of sufficiency and sentencing and his remaining claims for plain error.

Regarding the State's argument that the sufficiency and sentencing issues have been waived because they have been previously determined, the Petitioner replies that we should not apply the "law of the case" doctrine to the issues because this court's sufficiency decision was based on erroneous facts, the sufficiency issues presented in this delayed appeal are not identical to the sufficiency issue presented in the original direct appeal, and the post-conviction court's granting a delayed appeal "vacates the prior ruling of [this] court as if it had not previously happened." We disagree with the appellant.

The law of the case doctrine

> is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited. This rule promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower courts to the decisions of appellate courts.

Jefferson v. State, 31 S.W.3d 558, 561 (Tenn. 2000). This court previously ruled on whether the evidence was sufficient to support the appellant's convictions and whether consecutive sentencing was proper. Thus, the issues have been previously determined and cannot be revisited, and we will proceed with analyzing the appellant's remaining three issues for plain error.

Tennessee Rule of Appellate Procedure 36(b) provides that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." See also Tenn. R. Evid. 103(d). We may only consider an issue as plain error when all five of the following factors are met:

> a) the record must clearly establish what occurred in the trial court;

b) a clear and unequivocal rule of law must have been breached;

c) a substantial right of the accused must have been adversely affected;

d) the accused did not waive the issue for tactical reasons; and

e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotations omitted).

## B. Motion to Suppress

The appellant contends that the trial court erred by denying his motion to suppress evidence that was obtained as a result of the search of his vehicle. He claims that the police did not have probable cause to arrest him and that, even if they had probable cause, they could not search his vehicle incident to arrest pursuant to Arizona v. Gant, 556 U.S. 332 (2009).

At the suppression hearing, Officer Beaubien of the Clarksville Police Department (CPD) testified that on the afternoon of July 3, 2006, he was on patrol and heard about an "armed" robbery over the police radio. The broadcast included a description of a suspect vehicle, a white Mercury Grand Marquis, and the car's complete license tag number. About an hour and twenty minutes later, Officer Beaubien was in his patrol car in the parking lot of the Jehovah Witness Church on Tiny Town Road when he saw a car matching the description drive by. Three people were in the car. Officer Beaubien pulled onto Tiny Town Road and tried to catch up with the car. He did not activate his patrol car's emergency equipment at that time and saw the suspect car turn onto Summerhaven. He caught up with the car, requested confirmation of the tag number from dispatch, and confirmed that the tag number of the suspect vehicle matched the tag number for the car he was following. The car pulled into a driveway for a home on Summerhaven, and Officer Beaubien reported to dispatch that he was behind the car. Officer Beaubien said that when backup arrived, he used the "PA System" to order everyone in the car to raise their hands "because of the incident

-6-

that happened."

Officer Beaubien testified that the officers got the appellant, who was the driver, and Jacobi, who was sitting in the front passenger seat, out of the car. Selby, who was sitting in the back seat, could not get out because his seatbelt was fastened, and he could not unfasten it without lowering his hands. Officer Beaubien approached the car, allowed Selby to unbuckle his seatbelt, and had him get out of the car. Officer Beaubien said that after the three men had exited the car, the officers were walking around it and "looking in from the driver's side." They saw the handle or butt of a pistol underneath the armrest on the front seat. Officer Beaubien said that the butt of the weapon was in "plain view" and that it was a .22-caliber gun.

On cross-examination, Officer Beaubien testified that he was not parked in the church parking lot when he saw the Grand Marquis but had pulled into the lot to speak with another officer parked there. He said he did not know how fast the Grand Marquis was traveling. Officer Beaubien followed the Grand Marquis for about a mile before it pulled into the driveway on Summerhaven, and backup officers arrived about thirty seconds later. A total of four officers were at the scene. Officer Beaubien said that after the appellant got out of the Grand Marquis, the officers "took him into custody." Officer Beaubien did not have his weapon drawn because he was using the PA system, but the other officers had their weapons drawn. They did not give Miranda warnings to the appellant but did not ask him any questions. Officer Beaubien said that the three suspects "kept asking what was going on" and that he told them that "we'll get to that later." He said he did not answer their questions but did not ask them any questions.

Sergeant Scott Cutler acknowledged that on July 3, 2006, someone named James Turner was a witness to a robbery at the J & D Flea Market and reported a license tag number to police. Sergeant Cutler also acknowledged that Turner claimed to have seen individuals coming out of the flea market. Sergeant Cutler created a photograph array containing the appellant's photograph. He said he included the appellant's photograph because the license tag number reported by Turner had been connected to the appellant and the police had arrested the appellant. On the evening of July 3, Sergeant Cutler showed the array to Turner, and Turner selected the appellant's photograph.

On cross-examination, Sergeant Cutler testified that Turner had described one of the suspects and thought he could identify the suspect. The description was for a light-skinned, African-American male with a large build. Sergeant Cutler said he "put two and two together," thought the appellant matched the description, and placed the appellant's photo in the array. The appellant had been arrested earlier that day and was in the police office when Sergeant Cutler prepared the array.

-7-

Detective William Nalley of the CPD testified that he was the lead detective for the J & D Flea Market robbery. James Turner had witnessed the suspect vehicle leaving the scene, had tried to follow it, and had written down the car's tag number. The tag number matched the tag number on the appellant's car. The gun recovered from the appellant's car was a .22-caliber. Detective Nalley submitted the gun and shell casings recovered from the flea market to a laboratory for analysis. He acknowledged that the results showed the casings had been fired from the weapon. A victim of the flea market robbery, who had been shot in the head and side, testified at the appellant's preliminary hearing and identified the appellant as the shooter. Detective Nalley said he did not know anything about the Triangle Kwik Stop robbery.

Detective Nalley testified that he interviewed the appellant. The appellant waived his Miranda rights and gave a statement. At first, the appellant admitted to being involved in the flea market robbery but denied shooting anyone. Later, he said he accidentally shot one of the victims. After laboratory analysis showed that the shell casings from the robbery were fired from the gun found in the appellant's car, Detective Nalley obtained a search warrant for the car. During the search, the police collected three t-shirts, a pair of gloves, and other items. The appellant told Detective Nalley during his interview that he and the other robbers divided the money from the flea market robbery and that he received $400.

On cross-examination, Detective Nalley testified that when he arrived at the flea market on July 3, the victims were "lying there bleeding." They were unable to speak with him and were transported to Vanderbilt. The police found two shell casings, and the casings were matched to the appellant's gun. Fingerprints were on the gun, but they did not match the appellant.

The defense argued that the trial court should suppress the evidence about the gun found in the appellant's car because nothing showed the gun was involved in the Triangle Kwik Stop robbery and "based on the due process issues." In a written order, the trial court found that Officer Beaubien had probable cause to believe that the white Grand Marquis had been used in an aggravated robbery a short time before the stop and had probable cause to believe that the men in the car had participated in the robbery. Thus, the officer had probable cause to stop the car and arrest the appellant. The trial court stated that the officer then observed the gun in "plain view." The trial court ruled that the officer could search the car incident to the arrest without a warrant and denied the appellant's motion to suppress.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures." Generally, a warrantless search is considered presumptively unreasonable, thus violative of constitutional protections. See State v. Walker, 12 S.W.3d

460, 467 (Tenn. 2000). The recognized exceptions to the requirement include (1) a search incident to an arrest, (2) the plain view doctrine, (3) a consent to the search, (4) a Terry stop and frisk, and (5) the existence of exigent circumstances. State v. Berrios, 235 S.W.3d 99, 104 (Tenn. 2007).

In this case, the appellant does not contest that Officer Beaubien had probable cause to stop the vehicle. Instead, he argues that the officer could not search the vehicle incident to arrest. The appellant relies on Arizona v. Gant, 556 U.S. 332, 351 (2009), in which the United States Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe that the vehicle contains evidence of the offense of arrest." However, the appellant's reliance on Gant is misplaced in that the holding in Gant involved a search incident to arrest whereas the trial court in this case found that the gun was in plain view. The appellant does not contest the trial court's plain view finding.

In any event, the trial court also found that the officers could search the car incident to the appellant's arrest. The evidence at the suppression hearing established that the flea market robbery involved the shooting of a victim, that a witness observed individuals leaving the flea market, and that the witness wrote down the license tag number for a suspect vehicle. The appellant's car matched the description of the suspect vehicle, and Officer Beaubien confirmed prior to stopping the appellant's car that its tag matched that of the suspect vehicle. Therefore, even if the gun had not been in the officers' view, it would have been reasonable for them to believe that the car contained evidence of the offense of arrest and to have conducted a warrantless search of the vehicle pursuant to Gant. A clear and unequivocal rule of law was not breached, and the appellant is not entitled to plain error relief.

### C. Prosecutorial Misconduct

Next, the appellant contends that the State committed prosecutorial misconduct during closing arguments when the prosecutor argued facts outside the record and vouched for Selby's credibility. The State argues that the appellant is not entitled to relief. We agree with the State.

It is well-established that closing argument is an important tool for both parties during a trial; thus, counsel is generally given wide latitude during closing argument, and the trial court is granted wide discretion in controlling closing arguments. See State v. Carruthers, 35 S.W.3d 516, 577-78 (Tenn. 2000) (appendix). "Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried,

and not otherwise improper under the facts or law." State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). "The prosecution is not permitted to reflect unfavorably upon defense counsel or the trial tactics employed during the course of the trial." State v. Garner Dwight Padgett, No. M2003-00542-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 938, at *34 (Nashville, Oct. 21, 2004).

In Goltz, 111 S.W.3d at 6, this court outlined "five general areas of prosecutorial misconduct" that can occur during closing argument: (1) intentionally misleading or misstating the evidence; (2) expressing a personal belief or opinion as to the truth or falsity of the evidence or defendant's guilt; (3) making statements calculated to inflame the passions or prejudices of the jury; (4) injecting broader issues than the guilt or innocence of the accused; and (5) intentionally referring to or arguing facts outside the record that are not matters of common public knowledge. "In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996). In connection with this issue, we must examine the following factors:

> "(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case[;]
>
> (2) the curative measures undertaken by the court and the prosecution[;]
>
> (3) the intent of the prosecutor in making the statement[;]
>
> (4) the cumulative effect of the improper conduct and any other errors in the record[; and]
>
> (5) the relative strength or weakness of the case."

Id. (quoting Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

The appellant first complains that the State committed prosecutorial misconduct when the prosecutor repeatedly stated during closing arguments that the tag number on the appellant's car matched the tag number provided by Sandra Lewis on the day of the Triangle Kwik Stop robbery. He contends that such argument was improper because Officer Beaubien never testified about the license tag number for the car he stopped on July 3.

Our review of the trial transcript shows that Lewis reported tag number 375 LMG to

the police. Lewis testified that she had been sure about the first three digits. Officer Bieaubien identified a photograph of the appellant's vehicle, and the photograph showed the car's tag as 375 LGK. During closing arguments, the prosecutor noted the discrepancy in the tag number and the number reported by Lewis but argued that all of the evidence amounted to "bread crumbs that led right to [the appellant]." We conclude that the prosecutor's argument was not improper.

The appellant also contends that the prosecutor improperly vouched for Selby's credibility during the State's rebuttal closing argument by stating, "[Selby] knows what is going to happen to him by me if he gets up there and feeds me a bunch of [bologna]. He has every reason to tell he truth, because he don't want to go back to where he was. . . . That's why he told the truth." We agree with the appellant that the prosecutor was vouching for the Selby's credibility. However, as noted by the State, the prosecutor made his statements in response to defense counsel's stating during his closing argument that Selby "has every reason to color his testimony to help himself." Moreover, the trial court instructed the jury during the charge that statements and remarks by counsel were not evidence. Generally, we presume that a jury has followed the trial court's instructions. See State v. Butler, 880 S.W.2d 395, 399 (Tenn. Crim. App. 1994). Finally, the State's proof against the appellant was strong. Therefore, we conclude that he is not entitled to plain error relief.

## D. White Instruction

Finally, the appellant contends that the trial court erred by failing to instruct the jury properly on the especially aggravated kidnapping charge in light of State v. White, 362 S.W.3d 559 (Tenn. 2012). The State argues that the appellant is not entitled to relief. We conclude that the appellant has failed to show plain error.

As the jury was instructed in this case, Tennessee Code Annotated section 39-13-305(a)(1) defines especially aggravated kidnapping as "false imprisonment, as defined in § 39-13-302 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon."[1] False imprisonment is defined as the knowing removal or confinement of another unlawfully so as to interfere substantially with the other's liberty. Tenn. Code Ann. § 39-13-302(a). Our

[1]The record reflects that count 2 of the indictment, which charged the appellant with the especially aggravated kidnapping of Lavarre, alleged two alternative theories of the crime: by use or display of a deadly weapon and where the victim suffered serious bodily injury. See Tenn. Code Ann. Ss 39-13-305(a)(1), (4). However, at the conclusion of the State's proof, the trial court found that the State had failed to show Lavarre suffered serious bodily injury and instructed the jury only on especially aggravated robbery by use or display of a deadly weapon.

case law reveals a long-standing issue regarding the legitimacy of a kidnapping conviction when the act(s) establishing the offense occurred during an accompanying felony.

In State v. Anthony, 817 S.W.2d 299, 301 (Tenn. 1991), a jury convicted the defendant of the armed burglary of a Shoney's restaurant, the armed robbery of the restaurant's manager, and the aggravated kidnappings of the manager and five other employees. In a split decision, this court reversed all of the aggravated kidnapping convictions, holding that "[u]nless independent and separate fact patterns for both the armed robbery and the aggravated kidnapping can be proven, appellant can be convicted of only the armed robbery." Anthony, 817 S.W.2d at 301. Our supreme court, citing due process concerns, held that before a separate kidnapping conviction may be sustained, there must be a determination of whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony and [was] not, therefore, sufficient to support a separate conviction for kidnapping, or whether it [was] significant enough, in and of itself, to warrant independent prosecution and [was], therefore, sufficient to support such conviction. Id. at 306. After its own analysis, our supreme court affirmed this court. Id. at 307-08.

Later, in State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997), our supreme court modified the Anthony court's "essentially incidental" analysis and established a two-prong test for determining whether a separate conviction for kidnapping violates due process. The first step concerned a determination of whether the movement or confinement was beyond that necessary to commit the accompanying felony. Id. If so, the second step concerned ascertaining whether the additional movement or confinement (1) prevented the victim from summoning help; (2) lessened the appellant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id.

In White, our supreme court expressly overruled Anthony and its progeny, holding that "[t]he separate due process test articulated first in Anthony, and subsequently refined in Dixon . . . , is . . . no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." 362 S.W.3d at 578. Instead, the court held that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law," thereby concluding that a defendant's constitutional concerns are protected by appellate review of the sufficiency of the convicting evidence. Id. at 577-78. Therefore, our supreme court cautioned that "trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." Id. To effectuate this end, our supreme court devised the following instruction to be given by trial courts:

To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:

• the nature and duration of the victim's removal or confinement by the defendant;

• whether the removal or confinement occurred during the commission of the separate offense;

• whether the interference with the victim's liberty was inherent in the nature of the separate offense;

• whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

• whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

• whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

Id. at 580-81 (footnote omitted).

The State argues that the appellant is not entitled to plain error relief because "[p]anels of this Court have reached differing conclusions on whether the due process concerns outlined in White are present when the crimes at issue involve two separate named victims"; therefore, the appellant cannot establish that a clear and unequivocal rule of law has been breached. We recognize that this court has been split regarding this issue. See State v. Gary S. Holman, No. E2012-01143-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 65, at *36 (Knoxville, Jan. 27, 2014); but see State v. Josh L. Bowman, No. E2012-00923-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 735, at **44-45 (Knoxville,

Aug. 29, 2013), perm. to appeal denied, (Tenn. 2014). Moreover, we note that our supreme court recently granted applications for permission to appeal in cases where this court has held that due process concerns were not implicated when the crimes at issue involved separate victims. See State v. Jerome Maurice Teats, No. M2012-01232-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 18, at *57 (Nashville, Jan. 10, 2014) (holding that "the robbery of a business establishment in which multiple persons are present does not expand a perpetrator's due process protections such that he is free to move and/or detain multiple persons in order to commit a single robbery without facing kidnapping convictions"), perm. to appeal granted, (Tenn. 2014); State v. Ricco R. Williams, No. W2011-02365-CCA-RM-CD, 2014 Tenn. Crim. App. LEXIS 11, at **24-25 (Jackson, Jan. 7, 2014) (stating that "[w]e read White as requiring the expanded kidnapping instruction only when the jury is required to determine whether the defendant committed dual offenses of kidnapping and an accompanying crime for which some measure of detention was necessary against the same victim"), perm. to appeal granted, (Tenn. 2014). Nevertheless, in this majority's view, the law is clear and unequivocal that the due process concerns outlined in White are present regardless of whether the crimes at issue involve two separate named victims.

Turning to the instant case, the evidence shows that one of the robbers pointed a gun at Levarre and Perry and ordered Levarre, but not Perry, onto the floor. Pointing the gun at Levarre and then ordering him onto the floor prevented him from summoning help; reduced the robbers' risk of detection by preventing passerbys from seeing Levarre; and increased Levarre's risk of harm, as evidenced by his lying prone on the floor so that the robbers could shoot him. We note that the robbers shot Levarre after Perry had complied with the demand for money and cigarettes. Therefore, ample evidence supported the appellant's conviction for the especially aggravated kidnapping of Levarre. The appellant has failed to show that consideration of the error is necessary to do substantial justice and that the trial court's error was plain error.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the appellant's convictions are affirmed.

_____
NORMA McGEE OGLE, JUDGE